```
UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                :
MICHAEL DONNEL WESLEY,                          :
                                                :
                         Petitioner,            :
                                                :         MEMORANDUM
             - against -                        :         AND ORDER
                                                :         10-CV-245 (JG)
GEORGE B. ALEXANDER,                            :
                                                :
                                                :
                         Respondent.            :
---------------------------------------------------------------- X
```

A P P E A R A N C E S :

    MICHAEL DONNEL WESLEY
    545 West 126th Street
    Apt. 11-B
    New York, New York 10027
    *Petitioner, pro se*

    RICHARD A. BROWN
    District Attorney for Queens County
    125-01 Queens Boulevard
    Kew Gardens, New York 11415
    By:   John M. Castellano
           Johnnette Traill
           Merri Turk Lasky
    *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        Michael Donnel Wesley petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Wesley challenges his November 2005 conviction in New York State Supreme Court, Queens County of one count of criminal possession of a weapon in the third degree. Appearing *pro se*, Wesley seeks habeas relief on eight grounds, discussed below. Oral argument was scheduled for June 11, 2010, but Wesley failed to appear (he apparently had not received the written notice), so the petition was taken on submission. For the reasons set forth below, Wesley's petition is denied in its entirety.

BACKGROUND

A.   *The Offense Conduct*

The government's evidence at trial established that at approximately 1:30 P.M. on April 28, 2002, Wesley went to the apartment of his former girlfriend, Erica White, in Queens County. At the time, White was in the apartment with her three children and two friends. Wesley went to the bedroom of one of White's children. White then asked one of her friends, Shovanne McDaniel, to inform a police detective who had just left of Wesley's arrival.[1] Soon thereafter, three detectives arrived at the apartment. When the detectives entered the bedroom, they saw Wesley next to White's infant child. Detective Ivan Borbon asked Wesley if he had a gun with him. Wesley stated he did, and Borbon removed the gun from Wesley's waistband and arrested him.

Wesley was charged with one count of criminal possession of a weapon in the second degree and two counts of criminal possession of a weapon in the third degree. Wesley proceeded to trial *pro se* and was convicted of one count of criminal possession of a weapon in the third degree. He was acquitted of the two other counts.

B.   *Procedural History*

1.   *The Grand Jury Proceedings*

In early May 2002, Wesley elected to testify before the grand jury. During cross-examination, the prosecutor asked Wesley whether his name was "Jihad." Appellant Appx. at 15. Wesley testified that this was his Muslim name, which was given to him by his Imam. *Id.* at 16. The prosecutor asked Wesley whether he could change this name and Wesley testified "I can

---

[1] The detective had been in White's home in order to investigate her allegation that Wesley had threatened her with a gun six days earlier.

2

change it any chance I want to but I like it." *Id.* On May 15, 2002, the grand jury returned an indictment against Wesley.

  2. *The Trial Court Proceedings*

  In September 2005, Wesley proceeded to trial. He was assigned a legal advisor, but Wesley chose to represent himself. Detective Borbon testified that he arrested Wesley at White's home on April 28, 2002 after he removed a gun from Wesley's waistband. During his cross-examination of Borbon, Wesley asked several questions regarding police procedure and policy. Specifically, he asked whether a suspect should be pat frisked after being handcuffed, when a suspect should be read his *Miranda* rights, how a weapon should be stored after being recovered and if officers are required to wear bulletproof vests. Tr. 337-39, 344-45. He further asked whether Borbon followed these procedures on the day of Wesley's arrest. Tr. 337-39, 344-45. The prosecution objected to a number of these questions. Tr. 337-39, 344-45. The trial court overruled several objections and sustained others. In addition, the trial court sustained a hearsay objection when Wesley attempted to read from the Police Patrol Guide, which had not been admitted into evidence.

  At the beginning of the trial, the prosecution indicated that it intended to introduce three letters written by Wesley to White while Wesley was in prison on the charges stemming from his April 28, 2002 arrest. Tr. 163. In two of the letters, Wesley asked White not to come to court, and in one he implied that he would pay her if she did not. Tr. 163. A third letter enclosed an affidavit written by Wesley, to be signed by White, stating that White had falsified the charges. Tr. 163. The letters were received at trial to demonstrate Wesley's consciousness of guilt. Tr. 163-64. Wesley unsuccessfully objected to them, arguing they had minimal probative value. Tr. 257-59. Before White testified at trial, Wesley asked that all irrelevant portions of the

3

letters be redacted. Tr. 354. The court denied Wesley's request. Tr. 354. After the letters were admitted, Wesley moved for a mistrial based on the court's failure to redact the letters, which the court denied because Wesley had never specified which portions he wanted redacted. Tr. 374-76. Before summations, Wesley again moved for the letters to be redacted. Tr. 583. The court again denied his motion. Tr. 585.

Shavonne McDaniel testified as a defense witness that she was at White's home on April 28, 2002. Tr. 524. During his direct examination of McDaniel, Wesley asked several questions regarding McDaniel's written statement describing how one of White's children was injured on the date of Wesley's arrest. Tr. 538-43. Wesley later attempted to use the statement to impeach McDaniel. Tr. 585-86. The court precluded Wesley from doing so, finding that the prior statement did not bear on a material issue in the trial, *i.e.* it did not bear on whether Wesley was guilty of illegally possessing a weapon. Tr. 587. Wesley then asked for a mistrial, which was denied. Tr. 588.

3.  *The First Motion to Vacate the Conviction*

In December 2006, Wesley moved to vacate the judgment of conviction on the ground that the gun retrieved from him at the time of his arrest was not tested for fingerprints or DNA evidence. On April 6, 2007, the court denied Wesley's motion, finding that he had failed to prove that there was a reasonable probability that DNA testing would have resulted in a verdict more favorable to him. Wesley's application for leave to appeal to the Appellate Division was denied on June 29, 2007.

4.  *The Direct Appeal*

On March 7, 2007, Wesley's assigned appellate counsel filed a brief in support of Wesley's appeal, arguing that there was insufficient evidence to prove he possessed a weapon in

4

the third degree. Thereafter, Wesley requested permission to file a *pro se* supplemental brief, which the court granted. In this supplemental brief, Wesley argued that: (1) the prosecutor improperly cross-examined him about his nickname during the grand jury proceedings; (2) the trial court erred when it precluded Wesley from impeaching his own witness; (3) the trial court erred when it denied his request to redact his letters to White; (4) the trial court improperly restricted his cross-examination of Detective Borbon; (5) the state violated its obligations under *People v. Rosario,* 9 N.Y.2d 286 (1961) and *Brady v. Maryland*, 373 U.S. 83 (1963); (6) the state failed to prove his guilt beyond a reasonable doubt; (7) the court erred in denying his motion for DNA testing; and (8) he was prohibited from using the law library during his trial, which violated his constitutional right of access to the court.

On October 14, 2008, the Appellate Division affirmed the judgment of conviction. The Appellate Division held that the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *People v. Wesley*, 864 N.Y.S.2d 778, 778 (2d Dep't 2008). The court also held that his claim that he was denied access to the law library was "dehors the record and [was] thus not reviewable on direct appeal." *Id*. The court found Wesley's argument regarding his cross-examination of Detective Borbon to be "unpreserved for appellate review and, in any event, … without merit." *Id.* The court then held that all of the "defendant's remaining contentions are without merit." *Id.*

5. *The Second Motion to Vacate the Judgment*

On February 23, 2009, Wesley moved to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. He claimed that he was denied access to the law library and the right to speak to his legal advisor, that the prosecutor committed *Rosario* and *Brady* violations, and that the prosecutor knowingly presented perjured testimony at his trial. On

5

September 28, 2009, the court denied his motion to vacate judgment, finding the claims had been procedurally barred by the Appellate Division's order on direct appeal.

6. *The Petition for a Writ of Error Coram Nobis*

On June 14, 2009, Wesley filed a petition for a writ of error *coram nobis,* claiming he was denied the effective assistance of appellate counsel. On December 8, 2009, the Appellate Division denied his petition on the merits. *People v. Wesley*, 889 N.Y.S.2d 467 (2d Dep't 2009). On March 25, 2010, Wesley moved for leave to appeal to the New York Court of Appeals. On April 8, 2010, the court indicated that no action could be taken on his motion until Wesley submitted sworn proof of service and a copy of the papers filed before the Appellate Division.

7. *The Instant Petition*

Wesley filed this petition on January 21, 2010, claiming that he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 on eight grounds: (1) the prosecutor improperly questioned him during the grand jury proceedings; (2) the trial court erred in restricting his cross-examination of Detective Borbon; (3) the trial court erred in failing to redact portions of his letters to White; (4) the trial court erred in prohibiting Wesley from impeaching a defense witness; (5) he was denied his constitutional right of access to the courts; (6) the state court improperly denied his motion for DNA and fingerprint testing; (7) the prosecutor failed to disclose material information as required under *Brady* and *Rosario*; and (8) he was provided ineffective assistance of appellate counsel.

DISCUSSION

A.  *Standards of Review*

   1.  *Exhaustion and Procedural Default*

   28 U.S.C. § 2254(b) prevents a federal court from granting a petition for a writ of habeas corpus unless the petitioner has first exhausted all available state judicial remedies. In order to have exhausted those remedies, a petitioner must have "fairly presented" his federal constitutional claims to the highest state court by apprising it of "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*). An unexhausted claim that can no longer be exhausted is deemed procedurally defaulted. *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2000) ("[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991))). Furthermore, where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed*, 489 U.S. 255, 261 (1989); *Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001) (reliance must be "unambiguous and clear from the face of the opinion"); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995); *see also Coleman v. Thompson*, 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *but see Lee v. Kemna,* 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of

"exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

A claim that has been procedurally defaulted in state court generally cannot be reviewed on the merits by a federal habeas court. *See Harris v. Reed*, 489 U.S. at 260-62 (explaining rationale for habeas corpus procedural default rule); *see also Coleman*, 501 U.S. at 750. However, there are two circumstances in which a federal claim that has been procedurally defaulted -- or deemed procedurally defaulted due to the exhaustion requirement -- will nonetheless be reviewable on a federal petition for habeas corpus.

First, a petitioner is entitled to review of a procedurally defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable." *Id.* at 753 (internal quotation marks omitted) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Second, even if the petitioner is unable to show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for

excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22.

    2.    *Review of State Court Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[2]

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to

---

    [2]    This limited scope of review is referred to as "AEDPA deference." *E.g., Jimenez v. Wesley*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

9

'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has added that although "'[s]ome increment of incorrectness beyond error is required … the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B. *Wesley's Claims*

1. *The Prosecutor's Improper Cross-Examination in the Grand Jury*

Wesley alleges that the prosecutor's questions regarding Wesley's Muslim name "Jihad" prejudiced the grand jury proceedings and thereby deprived him of "his rights to fair Grand Jury Proceedings." Pet. at 10. Although the prosecution obviously acted inappropriately in the grand jury by raising the specter of terrorism in a case having nothing to do with terrorism, the unfairness does not warrant habeas relief. In order to be entitled to federal habeas relief, Wesley must establish that he is being held in violation of the constitution or laws of the United

10

States. 28 U.S.C. § 2254(a). Here, there is no federal constitutional or statutory right at issue. The Fifth Amendment right to grand jury presentment does not govern state criminal proceedings. *Alexander v. Louisiana,* 405 U.S. 625, 633 (1972). Moreover, under federal law, any defect in the proceedings leading to an indictment by a grand jury is extinguished by a petit jury's subsequent guilty verdict. *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989)("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in federal court."); *see also King v. Phillips,* No. 03 Civ. 6045, 2009 WL 891763, at *11-12 (E.D.N.Y. Mar 31, 2009).

      2.    *The Trial Court's Evidentiary Rulings*

Wesley claims that the trial court committed reversible error when it: (1) prohibited him from cross-examining Detective Borbon about whether his actions on the day of arrest deviated from standard police practice; (2) refused to redact the "irrelevant" portions of his letters from prison to White; and (3) prevented him from impeaching his own witness.

Wesley's claim regarding his cross-examination of Detective Borbon is procedurally barred because the Appellate Division held that it was unpreserved for appellate review. The New York Court of Appeals' subsequent decision denying leave to appeal does not alter the determination that Wesley's claim is procedurally barred from federal habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (where "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits"). Because the state court's decision actually and explicitly relied on a procedural default and was not based on the merits, there is an independent and adequate state law ground for the judgment, to which I must defer.

Wesley has failed to demonstrate cause for the default, prejudice therefrom or that a miscarriage of justice would result if the claim were not reviewed here.

Even if it were reviewable on the merits, Wesley's claims would fail. Each of the rulings at issue here was proper. First, the trial court properly precluded irrelevant questions about whether Detective Borbon followed proper police procedures during the course of Wesley's arrest. These questions did not bear on the issue of whether Wesley possessed a weapon on April 28, 2002. In addition, the trial court properly found that Wesley's attempts to read from the Police Patrol Guide, which was not in evidence, were improper. As for the letters Wesley wrote to White from jail, the trial court properly denied Wesley's requests to redact the "irrelevant" portions. At trial, Wesley did not state what portions of the letters he believed were irrelevant.[3] Lastly, the trial court properly precluded Wesley from impeaching his own witness, Shavonne MacDaniel, on an issue immaterial to the issue of Wesley's guilt. I agree with the trial court that whatever McDaniel had previously stated about an injury to one of White's children was not material to the question of whether Wesley illegally possessed a weapon on April 28, 2002. Accordingly, pursuant to New York Criminal Procedure Law § 60.35, Wesley was properly precluded from impeaching her with her written statement. More to the point here, the ruling did not deprive Wesley of a fair trial or the ability to present a defense.

In sum, erroneous evidentiary rulings can sometimes be a cognizable basis for federal habeas relief, *see Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004), but there is no basis for such relief here.

---

[3] I directed the respondent to provide the Court with copies of the letters. Having reviewed them, I conclude there is some language in the December 3, 2002 about sexual relationships that would have been left out of the letters, but I see no error in the trial court's refusal to order redactions in the absence of a specific request, and there was no significant prejudice to Wesley.

12

3.   *Wesley's Access to the Law Library During Trial*

Wesley argues that he was deprived of his constitutional right of access to the courts when he was denied permission to use the law library during the trial. *See Bounds v. Smith,* 430 U.S. 871, 821 (1977)(Prisoners "have a constitutional right of access to the courts.").

Wesley's claim is unexhausted, but that hardly appears to be his fault. He tried to raise it on his direct appeal, but since it depended on facts outside the record, the Appellate Division consigned the claim to a collateral attack. Then, when Wesley tried to raise the claim in a § 440 motion, it was rejected on the infirm ground that it had previously been rejected on the direct appeal.

In any event, the claim is without merit. The Supreme Court has held that prison authorities must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. The appointment of legal counsel satisfies the state's obligation to provide a defendant with access to the courts. *Bourden v. Loughren,* 386 F.3d 88, 94 (2d Cir. 2004). Wesley argues that because he represented himself at trial, the state was required to provide him access to the law library. However, the Supreme Court has never held that a *pro se* defendant for whom standby counsel was appointed has a constitutional right to law library access before and during trial. *See Kane v. Espitia,* 546 U.S. 9, 9 (2005)(per curiam)(holding that it was not clearly established federal law that the Sixth Amendment right to self-representation "implies a right of the pro se defendant to have access to a law library"). As a result, it cannot be said that the state court's denial of Wesley's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Accordingly, the claim affords Wesley no basis for habeas relief.

13

4. *DNA and Fingerprinting Analysis of the Gun*

Wesley challenges the state court's denial of his request for DNA and fingerprint analysis. Habeas relief is a vehicle for defendants to challenge the validity of their conviction and sentence. Wesley's claim, if granted, would not "necessarily demonstrate[] the invalidity of the conviction," but rather may present a ground upon which to do so. *McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007)(quoting *Heck v. Humphrey*, 512 U.S. 477, 481-82 (1994)). Accordingly, this is not a cognizable basis for federal habeas relief.

Moreover, even if reviewed on its merits, Wesley's claim must fail. The Supreme Court has held that defendants do not have a due process right to post-conviction DNA testing. *Dist. Atty's Office for the Third Jud. Dist. v. Osborne,* 129 S. Ct. 2308, 2322 (2009). Rather, a prisoner seeking post-conviction DNA testing must demonstrate that the state's post-conviction procedures "are fundamentally inadequate to vindicate the substantive rights provided." *Id.* at 2320. In *Osborne,* the Supreme Court upheld Alaska's post-conviction statute, which allowed "access to evidence … for those who seek to subject it to newly available DNA testing that will prove them to be actually innocent." *Id.* at 2317, 2320 ("The State provides for discovery in postconviction proceedings, and has--through judicial decision--specified that this discovery procedure is available to those seeking access to DNA evidence."). The New York statute allows for DNA testing when "there exists a reasonable probability that the verdict would have been more favorable to the defendant." N.Y. Crim. Proc. L. § 440.30(1-a). It was pursuant to this statute that the state court denied his request for relief. *People v. Wesley*, Order on Motion to Vacate Judgment, April 6, 2007 at 2 (McGann, J). The New York statute requires a less onerous showing to obtain access to the evidence than the statute at issue in *Osborne*. *See Figueroa v. Morgenthau*, No. 09 Civ. 4188, 2009 WL 3852467, at *2 (S.D.N.Y. Nov. 18, 2009).

As a result, the state court's decision cannot have been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Similarly, there is no Supreme Court precedent that requires the state to provide procedures for post-conviction fingerprint testing. Accordingly, Wesley's petition for habeas relief on this ground is denied.

5. *The Prosecutor's Failure to Disclose Evidence*

Wesley challenges the Appellate Division's decision rejecting his claim that the state prosecutor failed to comply with his disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Wesley argues that two Intake Bureau crime reports indicating that Wesley lived with White at one time were suppressed by the prosecutor. Appellant's Appx. at 63-64.

*Brady* requires the disclosure to the accused of evidence that "is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. However, "[e]vidence is not 'suppressed' if the defendant either knew … or should have known … of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir. 1982)(internal citations omitted). Here, Wesley knew that he once lived with White and, thus, the reports were not subject to disclosure by the prosecution. *See United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990). In any event, the prosecutor's notes indicate that the intake reports were, in fact, turned over as *Rosario* material on January 7, 2004.[4] Ex. A to Resp. Opp.

Finally, the facts contained in with the report are not material. Wesley argues that the reports establish that he lived with White at the time of his arrest, which would have been a

---

[4] The intake reports correspond to two arrests of Wesley, each of which led to an indictment. The prosecutor's *Rosario* notes indicate that the April 2002 intake report was turned over in connection with the indictment following that arrest; while the September 2002 report was turned over in connection with the second indictment. Nevertheless, the notes further indicate that both reports were turned over on the same day to the defendant or his legal adviser.

15

defense to the crime.[5] However, the reports showed only that White and Wesley had dated and lived together in the past. They do not establish that Wesley lived with White at her Queens home at the time of his arrest. As a result, the reports were not material to the determination of Wesley's guilt or innocence.

Because the information in question was known to the defendant, was not suppressed and was not material, the state court's decision denying Wesley's *Brady* claim was not contrary to or an unreasonable application of the Supreme Court's decision in *Brady*.

      6.    *Ineffective Assistance of Appellate Counsel*

Wesley claims that his appellate counsel was ineffective. This claim is unexhausted. Wesley filed an application for *coram nobis* relief on June 14, 2009, which included this claim. It was denied six months later, on December 8, 2009. Wesley failed to request leave to appeal within the statutory time, *i.e.*, 30 days following the denial of his application. N.Y. Crim. Proc. L. § 460.10(5)(a). The failure to properly seek leave to appeal renders his claim unexhausted. *See* N.Y. Crim. Proc. L. § 450.90(1).

The defendants further argue that Wesley's claim is now procedurally barred, because he no longer has a state court forum in which to raise this claim. *See Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). I disagree. Under New York Criminal Procedure Law § 460.30, Wesley has one year from the date of judgment to file a motion for an extension of time to seek leave to appeal to the Court of Appeals. Wesley filed his request for an extension on March 25, 2010. On April 8, 2010, the Court of Appeals notified Wesley that action could not be taken on his motion until he submitted sworn proof of service and a copy of all of the papers submitted to the Appellate Division. Wesley does not appear to have filed the supplemental

---

[5] In order to convict Wesley of criminal possession of a weapon in third degree, the prosecution had to prove, *inter alia*, that Wesley did not possess the weapon in his home or place of business. N.Y. Penal L. § 265.02.

16

paperwork required by the Court of Appeals. Because he failed to properly file for an extension in which to seek leave to appeal, his claim for ineffective assistance of counsel is unexhausted. However, since Wesley could still file the appropriate documents and the New York Court of Appeals could still act on his motion for an extension, Wesley's claim may not be procedurally barred.[6]

The claim is nonetheless without merit. In order to establish that counsel was ineffective, Wesley must prove that appellate counsel's performance: (1) fell below an objective standard of reasonableness and (2) that, but for appellate counsel's error, the outcome of the appeal would have been different. *Strickland v. Washington,* 466 U.S. 668, 688-94 (1984).

Wesley argues in his petition that his appellate counsel's performance was deficient because he failed to subpoena documents relating to Wesley's arrests in April and September of 2002. Wesley argues that the original records were needed in order for the court to consider his appellate claims. In an affirmation filed in opposition to Wesley's motion to relieve counsel, Wesley's appellate counsel indicated that the Clerk of the Court had informed him that the court had accepted Wesley's supplemental brief and appendix without the original documents. Aff. of Barry Stendig, Queens County Indictment 1395-02, at 2 (2d Dep't, Mar. 10, 2008). Moreover, the court's decision does not mention any error in the submission and makes clear that the court reviewed, and denied, Wesley's appeal on the merits. Accordingly, Wesley failed to establish either of the two requisites of a successful ineffective assistance of appellate counsel claim.

---

[6] On June 21, 2010, Wesley filed a letter requesting that I stay the consideration of the exhausted claims while the New York Court of Appeals considers his application for *coram nobis* relief. The "stay and abeyance" procedure is not available here, because Wesley's claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005); 28 U.S.C. § 2254(b)(2). Moreover, Wesley has failed to show good cause for his failure to exhaust. *Id.* Accordingly, Wesley's request for a stay and abeyance is denied.

In addition, Wesley appears to incorporate by reference the other ineffective assistance of appellate counsel arguments he raised in his application for *coram nobis* relief before the Appellate Division. These arguments include: (1) the prosecutor improperly cross-examined him about his nickname in the grand jury; (2) the court erred in precluding him from impeaching a defense witness; (3) the prosecutor committed both *Rosario* and *Brady* violations: (4) the court erred in refusing to redact the irrelevant portions of letters from Wesley to White; (5) the court erred in refusing to allow Wesley to question Detective Borbon about police procedure; (6) the court erred in denying Wesley's motion for DNA testing; and (7) the trial court abused its discretion by questioning witnesses.

Appellate counsel "does not have a duty to advance every nonfrivolous argument that could be made," but rather must present "significant and obvious issues on appeal." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)(quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)). As discussed above, six of the above claims are meritless, and, therefore it was not poor performance by appellate counsel when he failed to assert them. The seventh claim is equally meritless. A trial judge is constitutionally permitted to "assum[e] an active role in the resolution of the truth." *People v. DeJesus,* 42 N.Y.2d 519, 523 (1977). Here, the trial judge's questions were appropriate because they were designed to "clarify perplexing issues, to develop significant factual information, to enforce propriety, orderliness, decorum and expedition in trial." *Id.* The need for such intervention was heightened because the case was tried by a *pro se* defendant. Accordingly, Wesley's claim for ineffective assistance of appellate counsel is denied.

## CONCLUSION

For the foregoing reasons, the petition is denied. As Wesley has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So Ordered.
John Gleeson, U.S.D.J.

Date: July 7, 2010
Brooklyn, New York

19